UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ARDENT TECHNOLOGIES INC., *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 3:23-cv-137 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| ADVENT SVCS LLC, *et al.* | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| Defendants, | : | |
| | : | |

_____

ENTRY AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT OR, IN THE ALTERNATIVE,
FOR CHANGE OF VENUE (DOC. NO. 9)
_____

Presently before the Court is the Motion to Dismiss Plaintiffs' Complaint or, in the Alternative, for Change of Venue filed by Advent Svcs LLC d/b/a Advent Services ("Advent") and its sole member, Tomas Santos-Alejandro ("Santos-Alejandro") (collectively, "Defendants"). (Doc. No. 9.) Ardent Technologies Inc. ("ATI") and its founder and CEO, Srinivas Appalaneni ("Appalaneni") (collectively, "Plaintiffs"), brought the instant Complaint (the "Complaint") against Defendants alleging five causes of action. (Doc. No. 1.) Defendants argue that this Court lacks personal jurisdiction over them in all respects. (Doc. No. 9.) In the alternative, the Motion submits that this case should be transferred to the Northern District of Florida. (*Id.*) In their response to Defendants' Motion (the "Response"), Plaintiffs argue that the Court holds both general and specific jurisdiction over Defendants. (Doc. No. 10) Plaintiffs further posit that maintaining venue in the Southern District of Ohio will best serve the interest of justice. (*Id.*) For the reasons stated below, the Court **DENIES** the Motion.

1

I. **BACKGROUND**

On May 19, 2023, Plaintiffs, filed their Complaint against Defendants in the Southern District of Ohio pursuant to 28 U.S.C. § 1332. (Doc. No. 1.) ATI and Advent are both businesses in the information technology industry that work to secure federal contracts. (*Id.* at PageID 2.) Specifically, ATI and Advent pursue federal contracts through their affiliation with the federal government's 8(a) program (the "8(a) Program"), as established under the Small Business Act.[1] (*Id.*) ATI is an Ohio corporation with its principal place of business in Dayton, Ohio and Appalaneni is domiciled in Ohio. (*Id.* at PageID 4.) Advent is a Florida limited liability company with its principal place of business in Lynn Haven, Florida and Santos-Alejandro is domiciled in Florida. (*Id.*)

The Complaint alleges that Appalaneni and Santos-Alejandro were introduced by a mutual acquaintance in 2019, shortly after ATI outgrew the regulatory qualifications for participation in the 8(a) Program.[2] (*Id.* at PageID 7.) In or around February of 2020, Appalaneni and Santos-Alejandro agreed to establish a joint venture between ATI and Advent whereby the businesses would compete for federal contracts together. (*Id.*) This joint venture would provide ATI with access to 8(a) Program contracts it outgrew and provide Advent, a qualified but unseasoned federal contractor, the benefit of ATI's resources, reputation, and expertise. (*Id.*)

Appalaneni further alleges that, from the outset, Advent used its mutually beneficial relationship with ATI to establish a presence in Ohio. (Doc. No. 10-2, at ¶ 14.) For purposes of pursuing federal contracts in Ohio, Advent executed a lease agreement for use of ATI's office space in Dayton, Ohio. (*Id.*, at ¶ 7, Ex. 1.) Advent has since ceased using ATI's office address. (Doc. No 1-4 at PageID 34.) However, Advent continues to publicly represent a presence in

---

[1] 15 U.S.C. § 631, *et seq.*
[2] *See* 13 C.F.R. § 121, *et seq.*

Dayton, Ohio.  (Doc. No. 10-2, at ¶ 14, Ex. 3.)

By 2021 the Parties sought to further formalize their joint venture through the 8(a) Program's "mentor-protégé" initiative.³  (*Id.* at PageID 8.)  In November of 2021, Santos-Alejandro traveled to Dayton, on Appalaneni's invitation, to meet ATI's corporate team and negotiate terms of ATI's and Advent's prospective mentor-protégé arrangement.  (*Id.*)  The terms negotiated at this meeting would ensure that Advent had ATI's administrative support, access to ATI's resources, and that Advent would be awarded all of ATI's remaining 8(a) Program contracts.  (*Id.*; *see also* Doc. No. 1-1 at PageID 22-23.)  Additionally, the joint venture would expand to provide Appalaneni a 49% equity interest in Advent.  (Doc. No. 1 at PageID 8; *see also* Doc. No. 1-1 at PageID 23.)  On November 16, 2021, Appalaneni commemorated these proposed terms in an email to Santos-Alejandro.  (Doc. No. 1-1 at PageID 22-23.)  After returning to Florida, Santos-Alejandro responded, iterating that he and Advent were "thrilled to partner with" Appalaneni and ATI.  (*Id.*)

The 8(a) Program forbids a mentor company in any mentor-protégé arrangement owning more than a 40% equity interest their protégé company.  (Doc. No. 1 at PageID 9.)  Upon realizing this, the Parties quickly modified the terms of their mentor-protégé arrangement to provide Appalaneni a 40% equity interest in Advent.  (*Id.*)  On January 27, 2022, ATI and Advent submitted their executed mentor-protégé agreement to the federal government's Small Business Administration for approval in accordance with the 8(a) Program.  (*Id.*; *see also* Doc. No. 1-2 at PageID 24-31.)

The Parties' mentor-protégé agreement reified the terms allegedly negotiated between

---

³ The Small Business Administration's mentor-protégé initiative allows past participants in the 8(a) Program to provide resources and counseling to new participants in the 8(a) Program.  Whereas the new participants afford their mentor firm "prime" access to 8(a) Program contracts that they no longer qualify for otherwise.  13 C.F.R. § 125.9.

November and January 27, 2022, for the Parties' business relationship going forward. (Doc. No. 1-2 at Page ID 24-30.) The agreement proposed to the federal government that ATI would provide Advent with resources and assistance, including access to ATI's personnel, federal contracts, and capital. (*Id.* at PageID 25-27.) In return, Advent would ". . . convey to the Mentor an equity interest of 40% in the Protégé firm per the SBA guidelines." (*Id.* at PageID 25.) The federal government approved the Parties' proposed mentor-protégé agreement on February 2, 2022. (Doc. No. 1 at PageID 9.)

Even still, the Parties' business relationship soured within the year. (*Id.* at PageID 11-13.) In August of 2022, the Parties disagreed as to the adequacy of ATI's performance pursuant to the approved mentor-protégé arrangement. (*Id.* at PageID 11.) By October of 2022, Santos-Alejandro allegedly conveyed to Appalaneni his desire to renegotiate the terms of their joint venture. (*Id.* at PageID 12.) In November of 2022, Santos-Alejandro suggested renegotiation in person during a visit to Dayton, Ohio, but Appalaneni refused. (*Id.*) Santos-Alejandro and Appalaneni later aired their final grievances with one another and effectively ended their joint venture. (Doc. No. 1-4 at PageID 33-34; Doc. No. 1-5 at PageID 35-37.) The Complaint alleges that Advent nonetheless continues to solicit ATI's employees for employment opportunities with Advent. (Doc. No. 1 at PageID 13-15)

The Complaint alleges five counts: (1) breach of contract, (2) promissory estoppel, (3) unjust enrichment, (4) declaratory judgment for specific performance on the allegedly breached contract, and (5) tortious interference with a business/contractual relationship. (Doc. No. 1 at PageID 4.) On July 11, 2023, Defendants filed the present Motion. (Doc. No. 9.) On August 1, 2023, Plaintiffs filed their Response (Doc. No. 10) and on August 15, 2023, Defendants filed their Reply (Doc. No. 11). The Motion is now fully briefed and ripe for review and decision.

## II. STANDARD OF REVIEW

### A. Personal Jurisdiction

The party asserting a court's personal jurisdiction over an opposing party generally bears the burden of showing that such jurisdiction exists. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996); *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 547 (6th Cir. 2016) ("[t]he plaintiff bears the burden of establishing the existence of personal jurisdiction"). Where, as in the present case, a court considers a "Rule 12(b)(2) motion solely on written submissions, the plaintiff's burden is relatively slight, and the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *AlixPartners*, 836 F.3d at 548-49 (internal quotation marks omitted). "The plaintiff meets this burden by setting forth specific facts showing that the court has jurisdiction." *Id.* (internal quotation marks omitted). "The pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh the controverting assertions of the party seeking dismissal." *Id.* (internal quotation marks omitted); *see also Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997) ("[i]n deciding a motion to dismiss for want of personal jurisdiction, the court must, of course, view the affidavits, pleadings, and documentary evidence in the light most favorable to the plaintiff," and the court may also consider "undisputed factual representations of the" moving party that "are consistent with the representations of the" non-moving party).

### B. Venue

On a motion for transfer of venue, the moving party generally bears the burden of showing that (1) the transferor and transferee courts constitute proper venues, (2) transfer will serve the

convenience of the parties and witnesses, and (3) the transfer will better serve the interest of justice. *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1049 (S.D. Ohio 2002) (citing *U.S v. Northrop Corp.*, F. Supp. 330, 332 (S.D. Ohio 1992)); *U.S. v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 887 (N.D. Ohio 1999).[4] Regarding the second and third prongs of the moving party's burden, "there is no definitive list of factors that must be considered." *Centerville*, 197 F. Supp. 2d at 1049. Rather, district courts have broad discretion in determining whether a transfer is appropriate on balance. *Zimmer Enter., Inc. v. Atlandia Imports, Inc.*, 478 F. Supp. 2d 983, 990 (S.D. Ohio 2007) (citing *Fox v. Massey-Ferguson, Inc*, No. 93-CV-74615-DT 1994 U.S. Dist. LEXIS 8285, at *5, 1995 WL 307485, at *2 (E.D. Mich. Mar. 14, 1994)). "A motion for change of venue is properly granted when the balance weighs strongly in favor of transfer." *Centerville*, 197 F. Supp. 2d at 1049 (citing *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951)) (internal quotation marks omitted).

### III. ANALYSIS

In their Motion, Defendants contend that the Court lacks personal jurisdiction over them in all respects. (Doc. No. 9 at PagID 65-69.) Defendants have little, if anything to say, about their request for a venue transfer to the Northern District of Florida apart from the conclusory statement that the resolution of this dispute "should occur in the Northern District of Florida, not the Southern District of Ohio." (*Id.* at PageID 69.) Conversely, Plaintiffs argue that the Court has personal jurisdiction over Defendants and that a change of venue would be inappropriate on balance. (Doc. No. 10 at PageID 73). The Court will address personal jurisdiction and change of venue in turn.

---

[4] When a party challenges venue under Rule 12(b)(3), the plaintiff bears the burden of establishing that venue is proper pursuant to 28 U.S.C. § 1391. *Ring v. Roto-Rooter Servs. Co.*, No. 1:10-CV-179, 2010 U.S. Dist. LEXIS 108202, at *9 (S.D. Ohio Sept. 28, 2010); *Contech Bridge Sols., Inc. v. Keaffaber*, 2011 U.S. Dist. LEXIS 122875, at *33, 2011 WL 5037210 (S.D. Ohio Oct. 24, 2011). Yet, as discussed in greater detail below, Defendants in the instant case have not properly challenged venue under Rule 12(b)(3).

6

### A. **Personal Jurisdiction**

As a matter of settled law, federal courts' exercise of personal jurisdiction over a defendant is dependent upon "the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment." *CompuServe*, 89 F.3d at 1262; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) ("[t]he Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant"). This general rule ensures that courts only exercise personal jurisdiction where the defendant has "such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17, 66 S. Ct. 154, 158 (1945)).

Modernity tends to relax "the limits that the Due Process Clause imposes on courts' jurisdiction." *CompuServe*, 89 F.3d at 1262 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293, 100 S. Ct. 559, 565 (1980)). Modern technologies and communications, such as the internet, effectively render forums which are otherwise remote to defendants much more easily accessible. *Id.* Nonetheless, a court must consider a defendant's due process rights its "primary concern" when determining whether it has personal jurisdiction over such defendant. *Id.* (citing *Insurance Corp. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S. Ct. 2099, 2104 (1982)).

The Supreme Court has determined to focus federal courts' jurisdictional inquiry "on the nature and extent of 'the defendant's relationship to the forum state.'" *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal. San Francisco Cnty.*, 582 U.S. 255, 262, 137 S. Ct. 1773, 1779-1780 (2017)). In this vein, the Supreme Court has recognized "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and

7

specific (sometimes called case-linked) jurisdiction." *Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011)). The notable distinction rests in the "nature of the [defendant's] contacts." *CompuServe*, F.3d at 1263.

As general jurisdiction is concerned, the Due Process Clause of the Fourteenth Amendment requires that general jurisdiction only be exercised "when a defendant is essentially at home in" the forum state. *Ford Motor Co.*, 141 S. Ct. at 1024 (internal quotation marks omitted). Where a defendant is essentially at home in the forum state, a court in that state may exercise general jurisdiction respecting any and all claims levied against the defendant. *Bristol-Myers Squibb*, 582 U.S. at 262. In short, individuals are at home where they are domiciled, and corporations are at home both in their place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citing *Goodyear*, 564 U.S. at 922).

Regarding relevant state law, Ohio law allows courts to exercise general personal jurisdiction over defendants consistent with the Due Process Clause of the Fourteenth Amendment. Ohio Rev. Code § 2307.382(C) ("In addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution."). Ohio permits the exercise of general personal jurisdiction over non-resident defendants where the defendant's "continuous and systematic contact with Ohio renders it at home in the state." *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.*, 539 F. Supp. 3d 822, 831 at n. 2 (S.D. Ohio 2021) (internal quotation marks omitted).

By contrast, specific jurisdiction enables courts to exercise personal jurisdiction over "defendants less intimately connected with a State." *Ford Motor Co.*, 141 S. Ct. at 1024. To this end, courts utilize a two-part test to determine whether they have specific jurisdiction: (1) whether

specific jurisdiction is authorized by the forum state's long-arm statute, and (2) whether specific jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007); *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016).

The Court must first look to Ohio Rev. Code § 2307.382(A). Though Ohio allows the exercise of general jurisdiction to the extent of constitutional due process, the same is not true for the exercise of specific jurisdiction. *Premier Prop. Sales*, 539 F. Supp. 3d at 831, at n. 2 ("Plaintiffs – as [p]laintiff does here – asserting that a court has specific jurisdiction over a defendant must still demonstrate their claim arose from one of the enumerated factors"); Ohio Rev. Code § 2307.382(A). Pursuant to Ohio's long-arm statute, a court may exercise specific jurisdiction over a defendant where the cause of action arose from at least one of nine categories established in subsection (A). Ohio Rev. Code § 2307.382(A).

Regarding Fourteenth Amendment Due Process as applied to specific jurisdiction, the Court turns to the Sixth Circuit's seminal test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968). Generally, this test establishes that, to justify the exercise of specific jurisdiction, the defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor*, 141 S. Ct. at 1024 (internal quotation marks omitted and alteration adopted). The plaintiff "must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering into a contractual relationship centered

9

there." *Id.* (internal quotation marks omitted). "Yet even then—because the defendant is not 'at home'—the forum State may exercise jurisdiction in only certain cases." *Id.* The claim "must arise out of or relate to the defendant's contacts with the forum." *Id.* (internal quotation marks omitted). "Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal quotation marks omitted and alteration adopted). Finally, the actions of the defendant must be of such consequence that the exercise of jurisdiction over the defendant is reasonable. *Id*.

Defendants suggest that the Court lacks personal jurisdiction over them in all respects. (Doc. No. 9 at PageID 65-69). Whereas Plaintiffs contend that the Court may exercise both general jurisdiction and specific jurisdiction over Defendants. (Doc. No. 10 at PageID 77-85). Defendants are definitively not at home in Ohio. Therefore, the Court instead focuses on whether it may exercise specific jurisdiction over Defendants.

### 1) Specific Jurisdiction – Ohio's Long Arm Statute

Defendants' Motion relies largely on the presumed conclusion that Plaintiffs failed to adequately plead the Court's jurisdiction under Ohio's long-arm statute. (Doc. No. 9 at PageID 68.) However, Plaintiffs argue in their Response that the Court may exercise specific jurisdiction over Defendants pursuant subsections (A)(1), (2), and (4) of Ohio's long-arm statute. (Doc. No. 10 at PageID 82.)

Subsection (A)(1) of Ohio's long-arm statute grants a court specific jurisdiction where a plaintiff's cause of action arises from the defendant "transacting any business" in the State. Ohio Rev. Code § 2307.382(A)(1). The phrase "transacting any business" is necessarily broad. *Indus. Fiberglass Specialties, Inc. v. Alsco Indus. Prods., Inc.*, No. 3:08-CV-0351, 2009 U.S. Dist. LEXIS 35431, at *8-9, 2009 WL 982805, at *3 (S.D. Ohio Apr. 13, 2009) ("The Ohio Supreme Court has

10

also indicated that the word transact means to carry on business, and to have dealings, and it is broader than the word contract.") (internal citations and quotation marks omitted). As such, courts must make this determination on a case-by-case basis. *Premier Prop.*, 539 F. Supp. 3d at 828 (quoting *Marrik Dish Co., LLC v. Cahaba Lakes, LLC*, 835 F. Supp. 2d 449, 453 (N.D. Ohio 2011)) ("Courts evaluate the 'transacting any business 'test on a case-by-case basis because its general terms lend to a fact-sensitive analysis.'").

To assist with its "fact-sensitive" analysis, the Court has often looked to two pertinent factors when the claim at issue – as in the instant case – is "based in contract". *Id.* First, the Court must consider whether "the defendant reached out to the plaintiff in the forum state to create a business relationship." *Id.* Second, the Court must determine "whether the parties conducted their negotiations or discussions in Ohio or with terms affecting Ohio." *Id.*; *Indus. Fiberglass*, 2009 U.S. Dist. LEXIS 35431, at *9, 2009 WL 982805, at *3 (citing *Shaker Constr. Grp., LLC v. Schilling*, No. 1:08-CV-278, 2008 U.S. Dist. LEXIS 79645, at *9, 2008 WL 4346777, at *3 (S.D. Ohio Sept. 18, 2008)); *Premier Prop.*, 539 F. Supp. 3d at 828. Neither factor, standing alone, need be wholly dispositive of whether a cause of action arises from a defendant's having transacted business in the State. *Indus. Fiberglass*, 2009 U.S. Dist. LEXIS 35431, at *9, 2009 WL 982805, at *3. Instead, the Court weighs these two factors against "the balance of the evidence." *Id.* In doing so, the Court's determination hinges on whether a defendant's actions created "some continuing obligation that connects the nonresident defendant to the state." *Premier Prop.*, 539 F. Supp. 3d at 828 (internal citations and quotation marks omitted).

Here, Plaintiffs' claims arise from Defendants having transacted business in Ohio. As acknowledged above, Plaintiffs' claims in this case revolve around an alleged contract between the Parties in accordance with their joint venture. (Doc. No. 1 at PageID 4.) Viewing the pleadings

11

in a light most favorable to Plaintiff, the balance of the evidence indicates that the Parties' contract served their ongoing business relationship affecting Ohio.

For one, the evidence before the Court does not clearly establish whether Defendants or Plaintiffs made first contact in this case. The facts as alleged insinuate that the Parties were introduced by a mutual acquaintance. (Doc. No. 1 at PageID 2.) In 2020, the Parties conducted a telephone call to discuss pursuing a joint venture, but whether Plaintiffs or Defendants arranged the phone call is unclear. (*Id.* at PageID 7.) The most straightforward interpretation of the facts currently before the Court lends itself to the conclusion that the Parties here sought out one another. Neither was seemingly subject to unilateral solicitation by the other.

More importantly, Defendants played an active role in negotiating the terms of an ongoing relationship between the Parties which affected Ohio. Although Santos-Alejandro traveled to Ohio on Appalaneni's invitation on multiple occasions, Santos-Alejandro did so freely in an attempt to foster Defendants' ongoing business relationship with Plaintiffs. (*See e.g.*, Doc. No. 1 at PageID 8; Doc No. 10 at PageID 79.) Indeed, after Santos-Alejandro's and Appalaneni's meeting in November of 2021, Santos-Alejandro communicated his excitement to partner with Plaintiffs. (Doc. No. 1-1 at PageID 22.)

In effect, the terms of the Parties' joint venture would allow Defendants' access to finances belonging to an Ohio corporation (i.e., ATI), the goodwill of that same Ohio corporation, and human capital by way of Ohio residents. In return, Defendants would provide Plaintiffs access to 8(a) Program contracts for which ATI was no longer eligible. These terms necessarily affect Ohio. Put simply, the alleged contract here stood to have a lasting effect, however large or small, on Ohio's economy, industries, and citizenry. Thus, Plaintiffs' claims sufficiently arise from

Defendants' transacting business in Ohio to satisfy the State's long-arm statute and the Court need not consider whether subsections (A)(2) and (4) of Ohio's long-arm statute apply here.

### 2) Specific jurisdiction – Due Process

Having made its determination respecting Ohio's long-arm statute, the Court addresses whether the exercise of specific personal jurisdiction in this case comports with constitutional due process. Plainly speaking, the Parties disagree regarding this concept in its entirety. Therefore, the Court must consider three seminal factors to make its decision: (i) purposeful availment, (ii) arising from, and (iii) reasonableness. *Southern Mach. Co.*, 401 F.2d at 381.

#### i. Purposeful Availment

To exercise personal jurisdiction over an out-of-state defendant, the court must ascertain whether the defendant has purposefully availed himself of "the privilege of acting in the forum state or causing a consequence in the forum state." *Air Prods.*, 503 F.3d at 551. Where the defendant's contacts with the forum, "proximately result from actions by the defendant himself that create a substantial connection with the forum State . . . and where the defendant's conduct and connections with the forum are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 105 S. Ct. 2174, 2183 (1985) (quoting *World-Wide Volkswagen*, 444 U.S. at 297) (internal quotation marks omitted). For instance, where a party creates a continuing obligation in the state or where a business relationship is intended to be ongoing in nature the purposeful availment prong will be satisfied. *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 900 (6th Cir. 2017); *Air Prods.*, 503 F.3d at 551; *AlixPartners*, 836 F.3d at 550.

Defendants argue that they simply have too few contacts with Ohio to have purposefully availed themselves. (Doc. No. 9 at PageID 66) They state that that only 5% of Advent's revenues are attributable to Ohio contracts. (*Id.*) Further, Defendants discount the business relationship

13

between themselves and Plaintiffs as too brief to constitute a substantial connection with Ohio. *Id.* Altogether, these arguments mistake the quantity of Defendants' contacts with Ohio for their quality. *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989) ("[a] numerical count . . . has no talismanic significance . . . Rather, [t]he quality of the contacts as demonstrating purposeful availment is the issue . . .") (internal quotation marks omitted).

Here, Defendants purposefully availed themselves with respect to Ohio in much the same manner that they transacted business in Ohio under the State's long-arm statute. Indeed, "the Ohio 'transacting business' standard is coextensive with the purposeful availment prong of constitutional analysis." *Contech Bridge Sol., Inc. v. Keaffaber*, No. 1:11-CV-216, 2011 U.S. Dist. LEXIS 122875, at \*25, 2011 WL 5037210, at \*8 (S.D. Ohio Oct. 24, 2011) (quoting *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 436 (6th Cir. 2006)). Because the Court finds that Defendants transacted business in Ohio under the State's long-arm statute, Defendants can be said to have purposefully availed themselves with respect to Ohio by extension. Still, the Court considers Defendants' arguments all the same.

Before the Parties entered into the alleged contract at issue, Advent and ATI were engaged in an ongoing joint venture. (Doc. No. 1 at PageID 7.) Moreover, the Parties' mentor-protégé agreement contemplated the joint venture, as presented to the Court, lasting for at least three years following the date of approval. (Doc. No. 1-2 at PageID 28.) This business relationship was intended to be continuous, notwithstanding the length of time that the relationship actually persisted. Additionally, Plaintiffs' home was no secret to Defendants. Defendants knew when they negotiated for the use of Plaintiffs' time, resources, and expertise, that they would be drawing from Ohio's well. The proportional quantity of Defendants' revenues derived from Ohio are irrelevant to this analysis.

14

Consequently, Defendants have purposefully availed themselves of the privileges and consequences associated with doing business in Ohio.

### ii. Arising From

The second prong of the *Southern Mach.* due process test asks whether the claims at bar "arise from" the defendant's contacts with the state. *Air Prods.*, 503 F.3d at 553. In short, a defendant's contacts must be "related to the operative facts of the controversy." *Schmuckle*, 854 F.3d at 903. This is a "lenient standard" that is satisfied if the cause of action has a substantial connection to a defendant's activities in the state. *Id.*; *AlixPartners*, 836 F.3d at 552. Where – as here – a plaintiff alleges breach of contract, the standard is even more lenient because "that claim naturally arises from" the defendant's activities in the state. *Contech Bridge*, 2011 U.S. Dist. LEXIS 122875, at *28-29, 2011 WL 5037210, at *10 (citing *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).

In this case, Plaintiffs' claims themselves suggest that Defendants' Ohio activities arise from their contacts with the State. All Plaintiffs' claims stem from an alleged breach of contract. (Doc. No. 1 at PageID 4.) Defendants do not discuss this alleged contract in their motion when arguing the "arising from" prong. (Doc. No. 9 at PageID 67.) However, the Court is without the liberty to ignore the allegedly breached contract and the effects thereof for purposes of deciding this Motion. The alleged contract between the Parties at least marks Defendants' substantial contacts with Ohio and similarly embodies their in-state activities. That Defendants' activities in Ohio arise from their contacts with the State naturally flow from Plaintiffs claims. Therefore, the "arising from" prong of constitutional due process is satisfied.

### iii. Reasonableness

Finally, the Court must address the reasonableness prong. Reasonableness requires that

the exercise of specific jurisdiction over a defendant "comport with traditional notions of fair play and substantial justice." *AlixPartners*, 836 F.3d at 552; *CompuServe*, 89 F.3d at 1267-68. Where, as here, the first two prongs have been met, "only an unusual case will not meet the third criterion." *AlixPartners*, 836 F.3d at 552. In determining whether the exercise of personal jurisdiction is reasonable, the Court considers the following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy. *Air Prods.*, 503 F.3d at 554-55.

Defendants opine that exercising specific jurisdiction over them is unreasonable on two grounds. First, Defendants argue that exercising specific jurisdiction here would be unreasonable because of the burden litigating this case in Ohio would place on them. (Doc. No. 9 at PageID 67-68.) Defendants additionally suggest that Ohio has no interest in seeing this case adjudicated within its borders. (*Id.*)

The Court disagrees. First, Defendants will certainly be inconvenienced by having to defend this case in Ohio. However, "modern transportation and communication" sufficiently ease this burden. *CompuServe*, 89 F.3d at 1262 (internal citations and quotation marks omitted). Second, this case clearly implicates Plaintiffs' business interests and Ohio possesses an undeniable stake in protecting the business interests of its citizens. *Bird v. Parsons*, 289 F.3d 865, 876 (6th Cir. 2022). Further, Florida's similar interest with respect to Defendants does not usurp Ohio's legitimate interest here. In other words, given the satisfaction of the preceding two prongs of the constitutional due process test, this case can hardly be considered unusual. Therefore, the reasonableness prong is likewise satisfied.

### B. <u>Venue Transfer</u>

As a preliminary matter to Defendant's request for a transfer of venue, the Court

16

acknowledges Defendants' invocation of Rule 12(b)(3). In this respect, Defendants Motion makes no argument independent of their arguments pursuant to Rule 12(b)(2). A defendant's challenge to personal jurisdiction under Rule 12(b)(2) is "not synonymous" with a challenge on the grounds of improper venue. *Centerville*, 197 F. Supp. 2d at 1047. "Challenges to personal jurisdiction and to venue must be raised separately, and failure to raise challenges results in waiver of defenses." *Id.* (citing Fed. R. Civ. P. 12(h)(1)). Though Defendants here have effectively waived any dispute alleging improper venue in the Southern District of Ohio, the Court finds that venue is proper here pursuant to 28 U.S.C. § 1391(b)(2).

Considering Defendants' direct request, the Court must decide whether transferring this case to the Northern District of Florida is appropriate on balance. When deciding a motion to transfer pursuant to 28 U.S.C. § 1404(a), district courts must determine (1) whether the transferee court could exercise original jurisdiction over the case, (2) whether the transferee court would have personal jurisdiction over the defendants, and (3) whether the transferee court would constitute a proper venue. *Zimmer*, 478 F. Supp. 2d, 990 (citing *Fox*, No. 93-CV-74615-DT 1994 U.S. Dist. LEXIS 8285, at *5, 1995 WL 307485, at *2). The Parties to the instant action do not dispute that the Northern District of Florida meets these three criteria. Thus, the Court presumes, for this analysis, that the criteria are satisfied.

Upon finding that a transferee court satisfies these three basic requirements, "district courts have wide discretion" in deciding whether a transfer would best serve the "convenience of the parties and witnesses" and the "interest of justice." 28 U.S.C 1404(a); *Zimmer*, 478 F. Supp. 2d at 990 (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)). There is no exhaustive list of factors to analyze when considering whether to allow for a change of venue. *Centerville*, 197 F. Supp. 2d at 1049. However, courts have relied on guiding concepts such as:

17

>(1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Zimmer*, 478 F. Supp. 2d at 990 (quoting *Helder v. Hitachi Power Tools, USA Ltd.*, 764 F. Supp. 93, 96 (E.D. Mich. 1991)).

Defendants' Motion fails to submit any distinct argument in favor of venue transfer here. Defendants appear to take issue with the inconvenience that adjudicating this case in Ohio will place on them as opposed to the Northern District of Florida. However, if transferred, Plaintiffs would suffer the very same inconvenience. The Court can discern no clear indication that Defendants' comparative inconvenience will be greater in the Southern District of Ohio than Plaintiffs' in the Northern District of Florida. Rather, transferring this case would only have the Parties trade circumstances.

More importantly, the interest of justice strongly disfavors transfer. The interest of justice and principals of judicial efficiency when considering transfer are often commanded by which court is the busiest. *Zimmer*, 478 F. Supp 2d at 992 (internal citations omitted). Plaintiffs correctly point out in their Response that the Northern District of Florida is overwhelmingly busier than the Southern District of Ohio, with the Northern District of Florida holding a caseload per judgeship that is more than tenfold the Southern District of Ohio's. (Doc. No. 10 at PageID 87.)

Lastly the Court gives substantial weight to Plaintiffs' choice of forum. *Centerville*, 197 F. Supp. 2d at 1050 (internal citations omitted). Plaintiffs chose to prosecute this case in the Southern District of Ohio. It is not the Court's place to question why. Justice dictates only that the Court afford Plaintiffs' choice deference.

The foregoing considerations do not present a situation in which the interest of justice

would strongly favor a change of venue.  In sum, transferring this action to the Northern District of Florida would override Plaintiffs' choice of forum to merely trade the Parties' inconveniences and overburden its colleagues in the Northern District of Florida.  Therefore, the Court declines to transfer this action to the Northern District of Florida.

## IV.   CONCLUSION

The Court finds the following:

1. The Plaintiffs have made the requisite *prima facie* showing that this Court has personal jurisdiction over the Defendants; and

2. Transferring this action to the United States District Court for the Northern District of Florida would not serve the interest of justice.

For the reasons stated above, the Court **DENIES** the Defendants' Motion to Dismiss Plaintiffs' Complaint or, in the Alternative, for Change of Venue.  (Doc. No. 9).

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, August 29, 2023.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
