**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| ARDENT TECHNOLOGIES INC., *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 3:23-cv-137 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| ADVENT SVCS LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

---

**ENTRY AND ORDER GRANTING PLAINTIFFS' RULE 59(e) MOTION FOR
RECONSIDERATION, OR, IN THE ALTERNATIVE, MOTION FOR RULE
54(b) CERTIFICATION (DOC. NO. 73)**

---

Presently before the Court is Plaintiffs' Rule 59(e) Motion for Reconsideration, or, in the

Alternative, Motion for Rule 54(b) Certification (the "Motion") (Doc. No. 73).  On May 16, 2025,

the Court issued its Entry and Order Granting, in part, and, Denying, in part, Defendants' Motion

for Partial Summary Judgment (the "MPSJ Order") (Doc. No. 72), disposing of Plaintiff Srinivas

Appalaneni's ("Appalaneni") claim against Defendant Tomas Santos-Alejandro ("Santos-

Alejandro") for breach of contract.  (*See id.* at PageID 2765-66.)  Although the MPSJ Order

dismissed Appalaneni and his breach of contract claim from this case, two claims and two Parties

remain.  (*Id.*)  Appalaneni and Plaintiff Ardent Technologies, Inc. ("Ardent") (collectively,

"Plaintiffs") now move the Court to reconsider its MPSJ Order and revive Appalaneni's breach of

contract claim.  (*See* Doc. No. 73 at PageID 2767-68.)  In particular, Plaintiffs aver that the Court

committed manifest errors of law regarding consideration and the definiteness of the terms in the

Parties' alleged contract.  (*Id.* at PageID 2772-82.)  Alternatively, Plaintiffs request that this matter

1

be certified for an interlocutory appeal pursuant to Fed. R. Civ. P. 54(b). (*Id.* at PageID 2782-86.)

For good cause shown, the Court has determined to reevaluate Appalaneni's breach of contract claim. Based on the reasoning set forth below, the Court **GRANTS** Plaintiffs' Motion.

## I.     BACKGROUND

For the purposes of today's decision, the Court only recites the facts necessary to contextualize Plaintiffs' Motion, rather than reiterating the background provided by the Court's MPSJ Order in full.[1]

In short, Plaintiffs allege that Santos-Alejandro breached an otherwise enforceable equity agreement between himself and Appalaneni, by refusing to grant Appalaneni a minority interest in Defendant Advent Svcs LLC ("Advent"). (Doc. No. 1 at PageID 15-16.) Ardent and Advent began partnering as federal contractors in 2019. (Doc. No. 58 at PageID 1099-1100.) In November 2021, Appalaneni and Santos-Alejandro—the respective sole-shareholders of Ardent and Advent—met at NCR Country Club in Dayton, Ohio ("NCR") to discuss the prospect of Appalaneni taking a minority ownership interest in Advent (the "NCR Meeting"). (Doc. No. 57 at PageID 883-84.) At the NCR Meeting, Appalaneni proposed that Ardent would provide Advent certain corporate resources in the short-term, the medium-term, and the long-term, in return for a 49% minority interest in Advent. (Doc. No. 58 at PageID 1008, 1111-14, 1116.) In particular, Appalaneni proposed that he or another investment vehicle would take the minority interest in Advent under this agreement. (*Id.*) When the NCR Meeting concluded, Appalaneni and Santos-Alejandro shook hands and Appalaneni proceeded under the impression that the two gentlemen had entered into a binding equity agreement

In January 2022, Appalaneni and Santos-Alejandro directed Ardent and Advent into a

---

[1] For a complete factual background, *see* Doc. No. 72 at PageID 2750-55.

Mentor-Protégé Agreement (the "MPA"), submitted under the Small Business Administration's ("SBA") mentor-protégé program for small historically disadvantaged businesses.  (Doc. No. 1-2 at PageID 24-31.)  This MPA, contemplating the same transfer of equity proposed at the NCR meeting, named Ardent as the recipient of a reduced 40% minority interest in Advent.  (*Id.* at PageID 25.)  In this regard, the MPA additionally stated the transfer of equity to Ardent would be made in return for working capital and assistance securing financing.  (*Id.* at PageID 25-26.)  By 2023, Defendants Santos-Alejandro and Advent (collectively, "Defendants"), apparently dissatisfied with Plaintiffs' performance, terminated the MPA and withdrew from all further dealings with Plaintiffs.  (Doc. No. 1-4 at PageID 33-34.)  This suit followed.  (*See* Doc. No. 1.)

Defendants then submitted Defendants' Motion for Partial Summary Judgment ("Defendants' MPSJ") (Doc. No. 59) on March 21, 2025.  With respect to Appalaneni's breach of contract claim, Defendants argued that the equity agreement allegedly reached between Appalaneni and Santos-Alejandro at the NCR Meeting failed for a lack of definite essential terms. (*Id.* at PageID 1331-37.)  In the alternative, Defendants argued a fault in Appalaneni's breach of contract claim because Plaintiffs failed to satisfy a condition precedent under the MPA.  (*Id.* at PageID 1337-38.)  After briefing, on May 16, 2025, the Court issued its MPSJ Order, finding for Defendants on the breach of contract issue.  (Doc. No. 72 at PageID 2757-62.)  In particular, the Court found that the equity agreement proposed at the NCR Meeting lacked consideration by Appalaneni (*id.* at PageID 2759) and, in any event, the agreement failed to contemplate essential terms (*id.* at PageID 2759-61).

Plaintiffs then timely filed the instant Motion on June 13, 2025.  (Doc. No. 73.)  Defendants filed their response in opposition to Plaintiffs' Motion on July 7, 2025 (Doc. No. 74), and Plaintiffs submitted their reply briefing on the Motion on July 21, 2025 (Doc. No. 76).  This matter is now

ripe for review and decision.

## II.    STANDARD OF REVIEW

Where a district court renders a decision that "adjudicates fewer than all the claims" at issue, as the Court's MPSJ Order did in the case at bar, that decision "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and responsibility." Fed. R. Civ. P. 54(b). By extension, district courts have the authority under common law and Fed. R. Civ. P. 54(b) to reconsider an interlocutory order prior to final judgment. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x. 949, 959 (6th Cir. 2004). Nevertheless, "'courts will [only] find jurisdiction for reconsidering interlocutory orders where there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice.'" *Dunham v. Sheets*, No. 1:13-cv-226, 2015 U.S. Dist. LEXIS 61330, at *4, 2015 WL 2194755, at *2 (S.D. Ohio May 11, 2015) (quoting *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009)). This is generally consistent with the standard for reconsideration of a final judgment under Fed. R. Civ. P. 59(e). *See Al-Sadoon v. FISI*Madison Fin. Corp.*, 288 F. Supp. 2d 899, 901 (M.D. Tenn. 2002) (citing *GenCorp, Inc. v. Am. Int'l. Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)) ("Rule 59(e) motions to alter or amend judgment may be granted if there is a clear error of law, newly discovered evidence, and intervening change in controlling law, or to prevent manifest injustice") (internal quotation marks omitted).

Pertinent here, "[t]o establish manifest injustice a moving party must 'show that there exist[s] a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy.'" *Gibson v. Yaw*, No. 1:22-cv-773, 2023 U.S. Dist. LEXIS 62130, at *7, 2023 WL 2837200, at *3 (S.D. Ohio Apr. 7, 2023) (quoting *United States v. Carney*, No. 3:21-cv-98, 2022 U.S. Dist. LEXIS 39503, at *4, 2022 WL 678648,

4

at \*2 (W.D. Tenn. Mar. 4, 2022)), adopted by, *Gibson v. Yaw*, No. 1:22-cv-773, 2023 U.S. Dist. LEXIS 92364, 2023 WL 3652386 (S.D. Ohio Apr. 7, 2023). "Furthermore, a court will not find manifest injustice when the moving party simply reargues the issues that were not previously successful." *Nayyar v. Mt. Carmel Health Sys.*, Nos. 2:10–cv–135, 2:12–cv–189, 2014 U.S. Dist. LEXIS 19916, at \*7, 2014 WL 619394, at \*3 (S.D. Ohio Feb. 18, 2014) (citing *Render v. Forest Park Police Dept.*, No. 1:07-cv-489, 2009 U.S. Dist. LEXIS 61344, 2009 WL 2168783 (S.D. Ohio July 26, 2009)).

## III.  ANALYSIS

As suggested above, Plaintiffs invoke the Court's authority to reconsider its MPSJ Order due to manifest injustice and clear error of law. (*See* Doc. No. 73 at PageID 2767-68.) On one hand, Plaintiffs posit the Court improperly made a *sua sponte* determination that the alleged equity agreement between Appalaneni and Santos-Alejandro failed for a lack of consideration.[2] (*Id.* at PageID 2771-72.) On the other hand, Plaintiffs take issue with the Court's MPSJ Order insofar as the Court found that the alleged equity agreement at issue lacked essential terms to form an enforceable contract. (*Id.* at PageID 2777-82.) For context, the Court previously determined that the alleged equity agreement was fatally unclear as to who or what would be entitled to a minority interest in Advent under the contract. (Doc. No. 72 at PageID 2759-61.) On reconsideration, Plaintiffs submit this term was sufficiently clear to survive Defendants' MPSJ. (Doc. No. 73 at PageID 2777-82.) By either token, Plaintiffs request that this matter be certified for an immediate interlocutory appeal, if the Court is not inclined to vacate its MPSJ Order on Appalaneni's breach of contract claim. (*Id.* at PageID 2782-86.)

---

[2] Plaintiffs also argue the Court was substantively incorrect on the issue of consideration. (Doc. No. 73 at PageID 2772-76.) However, because the Court agrees with Plaintiffs' procedural argument on this front, the Court need not contend with Plaintiffs' broader dispute.

As a practical matter, the Court addresses Plaintiffs' Motion in two parts.  First, the Court reflects on the propriety of its decision that the alleged equity agreement here lacked consideration; and, second, the Court reexamines the definiteness of the alleged equity agreement's essential terms.  Because the Court is ultimately persuaded by Plaintiffs' Motion, the Court finds Plaintiffs' alternative request for a certificate of appealability to be **MOOT**.

### A.  Consideration

Plaintiffs assert that the Court *sua sponte* disposed of Appalaneni's breach of contract claim for a lack of consideration without providing Plaintiffs notice of its intent to do so.  (Doc. No. 73 at PageID 2771-72.)  Plaintiffs specifically claim that the Court's decision in this respect was not in keeping with the procedural requirements of Fed. R. Civ. P. 56(f).  (*Id.*)  The Court agrees and intends to remedy that procedural misstep accordingly.

Under Fed. R. Civ. P. 56(f)(2), district courts may grant a motion for summary judgment on grounds not raised by the parties only "[a]fter giving notice and a reasonable time to respond." When considering whether a court has made such a *sua sponte* ruling, "[t]he 'key inquiry' is whether the losing party was on sufficient notice that it needed to come forward with all its evidence required to withstand summary judgment." *Turcar, LLC v. I.R.S.*, 451 F. App'x. 509, 513 (6th Cir. 2011) (quoting *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x. 953, 959 (6th Cir. 2007)).  Generally, "a decision in the moving party's favor, even if on an alternative basis than those argued before the court," is a less suspect *sua sponte* action.  *Id.*  However, the grant of summary judgment on grounds not raised by the parties will nevertheless be improper if the issue is one "on which the parties have provided little to no argument." *Excel Energy, Inc.*, 246 F. App'x. at 962 (citing *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000)).

The Court finds that its decision to rebuke the alleged equity agreement here for a lack of consideration was made in error.  Defendants did not raise the issue of contractual consideration in Defendants' MPSJ and Plaintiffs did not brief the issue of their own accord.  Rather, the Parties largely focused their attentions on whether the alleged equity agreement was supported by the mutual assent necessary to form an enforceable contract.  Hence, the Court hereby **VACATES** its MPSJ Order to the extent that the Court based its decision on a lack of contractual consideration. The Court declines to invite additional briefing on the issue at this time, as consideration was not subject to Defendants' MPSJ and Appalaneni's individual claims are otherwise entitled to reinstatement.

### B.  Definiteness of Terms

On reconsideration, Plaintiffs further challenge the Court's determination that the alleged equity agreement was unclear on the essential term of who or what entity would be entitled to an equity interest in Advent.  (Doc. No. 73 at PageID 2777.)  Plaintiffs instead argue that Appalaneni and Santos-Alejandro agreed to let Appalaneni choose this essential term and the MPA is evidence that he did in fact choose.[3]  (*Id.* at PageID 2778-79.)  To that end, Plaintiffs claim that Appalaneni was exercising his bargained-for ability to assign his contractual rights.  (*Id.* at PageID 2780.)

As the Court stated in its MSPJ Order, "[t]o be enforceable, a contract's terms 'must be definite and certain.'"  *Kevin O'Brien & Assocs.*, 251 N.E.3d 712, 723 (Ohio Ct. App. 2024) (quoting *Episcopal Ret. Homes, Inc. v. Ohio Dep't. of Indus. Rels.*, 575 N.E.2d 134, 137 (Ohio 1991)).  This is to say that "there must be a meeting of the minds of the parties regarding the contract's essential terms …."  *Bank of New York Mellon v. Rhiel*, 122 N.E.3d 1219, 1225 (Ohio

---

[3] Notwithstanding Plaintiffs' previous repudiation of the MPA (Doc. No. 70 at PageID 2627), Appalaneni did testify that he eventually chose Ardent to receive equity in Advent (Doc. No. 58 at PageID 1116).  The Court then takes this opportunity to correct its prior oversight in stating the contrary.

2018) (citing *Kostelnik v. Helper*, 770 N.E.2d 58, 61-62 (Ohio 2002)).  Moreover, the manifest intent required for a meeting of the minds "must be gathered as of the time of entering into the contract."  *Murdock v. Europcar*, No. C-2-99-656, 2000 WL 1693761 (S.D. Ohio Nov. 3, 2000) (quoting *The Norfolk & Chesapeake Coal Co. v. John, Trading as Citizens Coal Syndicate*, 18 Ohio App. 512, 516 (Ohio Ct. App. 1923)) (internal quotation marks omitted).

Nevertheless, even a contract with unquestionably clear essential terms is subject to the "long-standing tradition in the common law that all contract rights may be assigned …." *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 861 N.E.2d 121, 128 (Ohio 2006) (citations omitted).  And, while this tradition is an implicit one, it is generally unobjectionable for contracting parties to negotiate such conditions ahead of time.  *See 216 Jamaica Ave., LLC v. S&R Playhouse Realty Co.*, 540 F.3d 433, 438 (6th Cir. 2008).

On reconsideration, the Court is persuaded that Appalaneni's individual claims for breach of contract and promissory estoppel should be reinstated.  On summary judgment, the Court was concerned that Plaintiffs sought to blur the lines between Appalaneni and Ardent.  However, the notion that Appalaneni was only bargaining for the ability to assign his contractual rights at the NCR Meeting gives way to a more apt view of the facts in this case.

Per the alleged equity agreement here, Appalaneni did not expressly refer to an ability to assign his right to receive a minority interest in Advent.  The evidence does not inherently cut one way or the other.  Yet, when faced with the argument, a reasonable factfinder could view the seeming lack of clarity regarding who or what would be entitled to an equity interest in Advent as an issue of assignability.  Because Ohio law provides for the free assignment of contractual rights, a jury finding the same with respect to Appalaneni could also determine that the essential terms of the alleged equity agreement at issue were clear.  In the end, a jury must discern the Parties' intent.

8

Accordingly, the Court **GRANTS**, Plaintiffs' Motion with respect to the essential terms of the Parties' alleged equity agreement.

Additionally, the Court must revive Appalaneni's promissory estoppel claim. The Court previously found that Defendants were entitled to summary judgment on Appalaneni's claim for promissory estoppel because the terms of Santos-Alejandro's promise to transfer equity in Advent were not sufficiently clear. However, for the reasons discussed above, this conclusion too changes if the Court assumes that Appalaneni and Santos-Alejandro were bargaining for the assignability of Appalaneni's purported contractual rights. Under that interpretation of the facts, a reasonable jury could decide that Appalaneni reasonably relied on a clear promise of a minority ownership interest in Advent. Therefore, the Court also finds it appropriate to reinstate Appalaneni's claim against Santos-Alejandro for promissory estoppel.

The same cannot be said, however, for Appalaneni's claim for declaratory judgment in relation to his breach of contract allegations. "'Injunctive relief is not a cause of action, it is a remedy.'" *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 587 (6th Cir. 2021) (quoting *Thompson v. JPMorgan Chase Bank, N.A.*, 563 F. App'x. 440, 442 n.1 (6th Cir. 2014)). As such, Appalaneni can only seek declaratory judgment as a remedy, not a cause of action unto itself.

## IV. CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Plaintiffs' Rule 59(e) Motion for Reconsideration, or, in the Alternative, Motion for Rule 54(b) Certification (Doc. No. 73). The Court specifically finds as follows:

1. The Court **GRANTS** Plaintiffs' Motion insofar as they seek reconsideration of the MPSJ Order. Accordingly, the Court **VACATES** its MPSJ Order with respect to Appalaneni's claims for breach of contract and promissory estoppel, and those

claims are hereby **REINSTATED**;

2. Similarly, the Court **VACATES** its prior dismissal of Appalaneni and Santos-Alejandro as parties to this matter;

3. Plaintiffs' alternative request for a certificate of appealability is deemed **MOOT**; and,

4. The Clerk is directed to modify the Court's docket in accordance with these findings.

   **DONE** and **ORDERED** in Dayton, Ohio, this Monday, September 22, 2025.

                                        s/Thomas M. Rose

                                   _____
                                        THOMAS M. ROSE
                                   UNITED STATES DISTRICT JUDGE